**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **GARY DEWAYNE. THOMPSON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **versus** | § | |
| | § | **No. 1:07-CV-109** |
| **HAMILTON COUNTY** | § | |
| **GOVERNMENT,** | § | **Edgar / Carter** |
| | § | |
| **CCA OF TENNESSEE, LLC,** | § | |
| | § | |
| **CAPTAIN DAVID GILLIUM,** | § | **JURY DEMAND** |
| **In his individual capacity and** | § | |
| **official capacity as an agent for** | § | |
| **Corrections Corporation of** | § | |
| **America,** | § | |
| | § | |
| **MIKE QUINN,** | § | |
| **In his individual capacity and** | § | |
| **official capacity as an agent for** | § | |
| **Corrections Corporation of** | § | |
| **America,** | § | |
| | § | |
| **OFFICER JOE McCOWAN,** | § | |
| **In his individual capacity and** | § | |
| **official capacity as an agent for** | § | |
| **Corrections Corporation of** | § | |
| **America, and** | § | |
| | § | |
| **OFFICER KRISTOPHER KIMSEY,** | § | |
| **In his individual capacity and** | § | |
| **official capacity as an agent for** | § | |
| **Corrections Corporation of** | § | |
| **America,** | § | |
| **Defendants.** | § | |

# AMENDED COMPLAINT

## INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§1983, 1985, 1981, and 1988 to redress the deprivation of rights secured to the plaintiff

by the Eighth, and Fourteenth Amendments to the United States Constitution; Article 1, §§ 7, 8, 13, 16 and 32 of the Tennessee Constitution; and the statutory and commons laws of the State of Tennessee by the defendants.

2. Plaintiff avers that the individually named officers of CCA of Tennessee, LLC, ("CCA") subjected the plaintiff to cruel and unusual punishment without the due process of law.

3. Plaintiff avers that the individually named officers violated the plaintiffs' rights to Due Process of law and Equal Protection of Law.

4. In addition, plaintiff avers that the individually named officers humiliated, and tortured the plaintiff.

5. Plaintiff also maintains that the individually named officers committed these violations and torts as a result of policies, customs, and/or procedures of CCA.

6. In addition, plaintiff avers that the individually named officers humiliated plaintiff, subjected plaintiff to mental anguish and emotional distress, and maliciously punished plaintiff when he refused to continue in their unlawful conduct against other inmates, namely ERIC L. ELDER ("Elder").

7. Plaintiff avers that Hamilton County Government ("County") contracted with co-defendant CCA to perform and carry out the goals and duties of the County pursuant to Title 41 of the Tennessee Code Annotated, and hence the individually named officers committed these violations and torts as a result of policies, customs, and/or procedures of the County.

8. Plaintiff is a member of a protected class of persons as defined under Title VII of Civil Rights Act of 1964 (42 U.S.C. §§2000e, *et seq.*) ("Title VII"). However, the

Defendants' violations of the Plaintiffs' rights to Equal Protection in this matter is not redress-able under Title VII.

JURISDICTION AND VENUE

9. This is an action to redress the deprivation of rights secured to the plaintiff by the Eighth, and Fourteenth Amendments to the United States. Thus, this Court is vested with original jurisdiction under 28 U.S.C. §§1331 and 1343.

10. Plaintiff invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 and *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) over the Plaintiff's cause of action under the constitutional, common law, and statutory laws of the State of Tennessee in that the said laws form the same case or controversy.

11. Venue is proper in this Court, Chattanooga Division, pursuant to 28 U.S.C. §1391(B). All acts complained of occurred within the City of Chattanooga and Hamilton County, both political sub-divisions of the State of Tennessee, and physically located within the fourteen county district of this Court.

a. Plaintiff is a resident of the City of Chattanooga, Hamilton County, State of Tennessee.

b. To the best of plaintiff's knowledge and belief, the individually named officers are also residents of Hamilton County, Tennessee

c. CCA is a for-profit corporation registered with the Tennessee Secretary of State to do business in the field of corrections, with its primary place of business for purposes of this Complaint in Hamilton County, Tennessee at a facility known as Silverdale ("Silverdale").

d. The County is a political sub-division of the State of Tennessee, organized through the laws of the State of Tennessee.

THE PARTIES

12. At all times relevant to this cause of action, County is a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

a. The County, through its commissioners, has charge to supervise and control the workhouse and all of its departments.

b. The County, through its commissioners, has a duty to supervise inmates housed in the workhouse, to select, train, discharge, and supervise all superintendents, guards, and employees of the workhouse and to regulate and control the workhouse in its exercise of the County's business.

13. At all times relevant to this cause of action, CCA is an agent of the Hamilton County Government ("County"). CCA is a state actor, contracted by the County to house inmates sentenced pursuant to Tennessee state laws for term of incarceration not to exceed eleven months and twenty-nine days; to house pre-trial detainees for the municipal and county governments within Hamilton County; and to house detainees for the Government of the United States.

a. CCA specializes in the construction, design and management of prisons, jails, and detention facilities and the housing and transportation of inmates for municipal, county, and state governments, in particular, the County.

b. CCA manages males, females, and juveniles in all levels of security in its facilities for the County.

c. CCA provides oversight of the actions of all levels of its personnel and provides a forum for inmate grievances against individual employees of CCA.

14. At all times relevant to this cause of action, CCA, with oversight by the County, is responsible for the creation and maintenance of Silverdale, which is a detention facility that operates under the laws of the state of Tennessee state law and regulated by the laws of the State of Tennessee, specifically pursuant to the Tennessee Private Prison Contracting Act of 1986 and Title 41 of the Tennessee Code Annotated as to:

a. The training and certification of its employees;

b. To create rules and regulations to ensure the safe confinement and treatment of prisoners placed within the custody of its individual officers, employees and agents by the municipal, state, and county governments within Hamilton County, Tennessee;

c. To create rules and regulations to properly identify officers employees and agents (hereinafter, "officers") who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and CCA on notice of officers, employees and agents who are a threat to citizens within its jurisdiction;

d. To create rules and regulations to properly identify and discipline CCA officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and CCA on notice of officers who are a threat to inmates within its control;

e. To not retain or promote CCA officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and CCA on notice of officers, employees and agents who are a threat to inmates within its control;

f. To investigate allegations by inmates of abuse and misconduct perpetrated by CCA officers and to take action to take disciplinary action against such officers.

g. Plaintiff sues CCA in its official capacity and an agent of the County and its "individual" capacity as a corporation.

15. At all times relevant to this cause of action, the individually named officers were employed by CCA and acted under the color of law, statute, ordinance, regulation, custom, practice, or usage for the County. In addition:

a. At all times relevant to this cause of action, the individually named officers acted in their official capacities as agents, servants, and employees, for CCA and the County. Plaintiff sues these defendants in their individual and official capacities;

b. At all times relevant to this cause of action, Defendants David Gillium and Mike Quinn ("Quinn") were supervisors for CCA and the County, and plaintiff believes that Gillium held the rank of "captain" and Quinn chief of security.

FACTUAL BASIS OF COMPLAINT

16. At all times relevant to this cause of action, Plaintiff was an inmate held at Silverdale.

17. At all times relevant to this cause of action, Elder and Ernest Carthorn ("Carthorn") were inmates held at Silverdale.

18. On December 4, 2006, Defendants Gillium, McCowan , and Kimsey (all white males) engaged in a confrontation with Elder, a white male with a history of mental disorders, about a swastika cut into Elder's arm.

19. Defendant McCowan told Elder that he was going to put "more charges" on Elder for "racial discrimination" and that Elder was a "retarded fuck."

20. Non-defendant employee Royal arrived at plaintiff's segregation cell and, with Carthron in the same cell, told plaintiff that Gillium was bringing an inmate to plaintiff for plaintiff to "rough up," and "whatever that means."

21. Gillium told Elder that he, McCowan, and Kimsey, were going to place Elder in a cell with the "largest nigger," "preferably a homosexual" and that Gillium did not care what happened to Elder.

22. Gillium, McCowan, non-defendant Garner, and Kimsey under the direction and supervision of Gillium uncuffed Elder and forced Elder into the segregation cell that housed plaintiff and Carthorn, both black males.

a. At no time did any of the said CCA officers record the event by video camera as required by CCA directives and policies.

23. Gillium told plaintiff, "you know what to do."

24. Plaintiff asked Gillium if Gillium would return plaintiff's radio to him if plaintiff hurt Elder.

25. Gillium agreed.

26. Plaintiff grabbed Elder and slung Elder to the floor.

27. Gillium, McCowan, non-defendant Garner, and Kimsey then exited the cell, and waited outside of the cell for plaintiff to injure Elder.

28. Plaintiff told Elder to makes sounds as if he were being harmed by plaintiff, and Elder complied.

29. Throughout the remainder of Gillium's shift, Gillium checked with plaintiff to see if plaintiff beat up Elder "real good."

30. Neither Gillium, nor any other officer of CCA brought Elder a mattress or blanket.

31. Elder slept on the bare floor, but plaintiff gave Elder his own blanket to try and sooth Elder.

32. On December 5, 2006, plaintiff, Elder, and Carthron, made written complaints to Chaplain Franklin E. Lewis of CCA.

33. Non-defendants Royal and Garner reported the incident to supervisory personnel of CCA, specifically, defendant Quinn.

34. Gillium has forced plaintiff to perform such actions against other inmates to help Gillium and defendants Kimsey and McCowan to "keep order."

a. In 2005, Gillium ordered plaintiff to harm a federal inmate identified as "Roberge."

b. Plaintiff inflicted two black eyes on Roberge.

c. As a result, the federal government notified CCA that any other injuries of this nature must be reported to the federal judiciary of this Court.

35. As a reward for such actions, Quinn, Gillium, Kimsey and McCowan gave plaintiff the best jobs and privileges in Silverdale.

36. After plaintiff made his complaint, CCA personnel began a series of retaliations against plaintiff by a series of unsubstantiated “write-ups” and non-documented and arbitrary actions that resulted in CCA personnel placing plaintiff into “the hole” or solitary confinement for several days at a time.

37. CCA and the County failed to criminally prosecute the individual defendants Gillium, Kimsey, or McCowan.

a. CCA and the County failed to report the criminal and tortuous actions of Gillium, Kimsey, or McCowan to any law enforcement agency.

38. As a direct result of the unlawful conduct of all defendants, plaintiff endured the humiliation and mental anguish of being compelled to act as a “gladiator” and “kapo” for the pleasure and benefit of CCA and the individually named defendants.

39. At all times during the events herein described, the individually named defendant officers were engaged in a joint adventure.

a. The officers assisted each other in performing the various acts described and lent their physical presence and support in performing their various actions as described and lent their physical presences, support, and the authority of their respective offices to each other during the said events.

40. At no time did any of the individual defendants come to the aid of plaintiff or Elder in any manner, nor render any aid to the plaintiff or Elder in any manner, nor report the misconduct of one another.

41. At no time did any of the individual defendants have cause or authority in any manner whatsoever to force plaintiff to commit the acts described herein.

42. The individual defendant's misconduct and abuse of plaintiff was tantamount to cruel and unusual infliction of punishment without Due Process of Law and indeed, torture.

43. The entirety of the defendants named in this law suit conspired to violate the plaintiff's civil rights in that they failed to report the unlawful actions of their fellow officers, failed to properly document and report their actions and the actions of their fellow officers, failed to report and at least document the unlawful actions of their fellow officer, and continued to be "bricks in the wall of silence" and/or to continue to persist in a "Code of Silence" to protect their fellow officers who tortured, humiliated, and abused plaintiff and to protect the corporate interests of CCA and the interests of the County.

a. In addition, CCA and the County failed to properly investigate this matter and take action against the individual defendants, and their sole concern was to protect the corporate interests of CCA and the interests of the County.

44. In addition, all of the named and identified officer's failure to report their fellow officers and to take steps to prevent the very abuses of the plaintiff in their presence constitutes a deliberate indifference for the safety of the plaintiff in violation of his right to be free from cruel and unusual punishment.

45. In addition, all of the officer's and the supervisory personnel, chiefly Gillium and Quinn, failure to report their fellow officers and to take steps to prevent the abuses of the plaintiff in their presence constitutes a disregard for the safety of the plaintiff, is tantamount to a criminal conspiracy to an aggravated assault and the infliction of cruel and unusual punishment.

46. CCA and the County had prior knowledge of Gillium's misconduct in that Gillium, was a "captain" and an "administrative captain" with the supervisory authority over all shift captains, and subordinate to the Chief of Security, Mike Quinn.

a. CCA and the County had prior knowledge of Gillium's misconduct in that Quinn had direct knowledge of the unlawful actions averred herein and his subsequent focus was to protect the corporate interests of CCA.

47. CCA and the County attempted to prevent any outside inquiries by attorney Karla Gothard ("Gothard") of the 11th Judicial Circuit Office of the Public Defender into the events described herein.

a. Gothard, attorney for Elder, received a report from plaintiff that he was forced to harm Elder as claimed herein.

b. When Gothard arrived at December 5, 2006 to interview plaintiff, Quinn tried to prevent her ability to interview plaintiff in regards to her duties to investigate the harm brought against her client, Elder.

48. As a direct result of the actions of the individual defendants, CCA is directly liable for the harm inflicted on the plaintiff through CCA's in that CCA placed its corporate interests before that of the interests of plaintiff. This particular policy directed the actions of its supervisory personnel Quinn and Gillium.

COUNT ONE: VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW
42 U.S.C. §1983

49. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the plaintiff reasserts and incorporates ¶¶ 1 through 48.

50. The acts of the officers were acts that demonstrated indifference to the life and safety of the plaintiff and were the direct and proximate cause of plaintiff's damages and needless suffering.

51. No reasonable officer or person would have forced plaintiff act in such a manner.

52. The failure to render aid to the plaintiff, and the subsequent punishments taken against plaintiff for his refusal to continue in the unlawful conduct, or to prevent the infliction of such harm by the officers, or any other officer, was an omission that demonstrated indifference to the life and safety of plaintiff.

53. The officers acted under color of law and their negligence and intentional acts deprived the plaintiff his rights secured to him under the United States and Tennessee Constitutions to be free from:

a. Cruel and unusual punishment, indeed torture, without due process of law.

54. CCA, with oversight from the County, and the County, had a duty of care to the plaintiff to ensure that is officers were properly trained in the use of force in their discipline of inmates, when to render aid to an inmate, and to train its officers to report officer abuse of inmates. This failure constitutes deliberate indifference.

55. CCA with oversight from the County, and the County, has a policy, practice, or custom to improperly investigate inmate complaints of officer misconduct. This failure constitutes a policy, practice, or custom of deliberate indifference.

56. CCA with oversight from the County, and the County, has a policy, practice, or custom to tolerate the abuse of inmates by their officers. This failure constitutes a policy, practice, or custom of deliberate indifference.

57. CCA with oversight from the County, and the County, maintains a policy, custom, or practice of failing to properly train its supervisory personnel to oversee the discipline and protection of inmates, to properly investigate and punish its officers, to properly train its supervisory personnel in how and when to report and punish the unlawful actions of its officers and to initiate criminal prosecutions of officers who commit such unlawful acts upon inmates.

58. Consequently, the actions stated in this complaint created an environment that allowed the defendant officers to believe that their abusive behavior would not be properly monitored, investigated, nor punished.

a. In particular, the averments stated in this complaint constitute ratification and approval of the unlawful conduct of the individual defendant's actions by CCA and the County.

b. Such ratification and approval by CCA and the County and its supervisory agents constitutes deliberate indifference to the public at-large.

c. Additionally, such acts and omissions by CCA, the County and it officers constitutes a policy, practice, custom, usage, or tradition, to place the corporate interests of CCA before that of the inmates, in particular plaintiff, in their charge.

59. Plaintiff avers that such actions and omissions on the part of all the defendants constitutes a conspiracy violation of this law and were done to deprive the

Plaintiff of the following rights established under the United States and Tennessee Constitutions:

a. The right to be free from the infliction of cruel and unusual punishment as secured to him by the Eighth Amendment;

b. To the right to Equal Protection under Law; and

c. As a prisoner of CCA and the County to be treated humanely and without undue rigor, pursuant to Article 1, §§13 and 32 of the Tennessee Constitution.

60. The actions of the officers were done with actual malice toward the plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the plaintiff. Thus the plaintiff is entitled to punitive damages against the individually named officers, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

61. The omissions of CCA and the County constitute deliberate indifference toward the plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the plaintiff. Thus the plaintiff is entitled to actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

COUNT TWO: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1981

62. Plaintiff incorporates fully ¶¶ 1 through 61 as if fully set out herein and avers that such actions and omissions on the part of the defendants constitutes a violation of this law for which they are individually and jointly liable.

COUNT THREE – CONSPIRACY TO VIOLATE CIVIL RIGHTS 42 U.S.C. §1985

63. Plaintiff incorporates fully ¶¶ 1 through 61 as if fully set out herein and avers that such actions and omissions on the part of the defendants constitutes a violation of this law for which they are individually and jointly liable.

COUNT THREE – NEGLIGENCE

64. Plaintiff incorporates fully ¶¶ 1 through 61 as if fully set out herein and avers that such actions and omissions on the part of the defendants constitutes a violation of this law for which they are individually and jointly liable.

COUNT FOUR – NEGLIGENCE PER SE

65. Plaintiff incorporates fully ¶¶ 1 through 61 as if fully set out herein and avers that such actions and omissions on the part of the defendants constitutes a violation of TENN. CODE ANN. §§39-13-101 and 102 for which they are individually and jointly liable.

COUNT FIVE – COMMON LAW ASSAULT AND BATTERY

66. Plaintiff incorporates fully ¶¶ 1 through 61 as if fully set out herein and avers that such actions and omissions on the part of the defendants constitutes a violation of this law for which they are individually and jointly liable.

COUNT SIX – COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. Plaintiff incorporates fully ¶¶ 1 through 61 as if fully set out herein and avers that such actions and omissions on the part of the defendants constitutes a violation of this law for which they are individually and jointly liable.

WHEREFORE, the plaintiff demands judgment against the defendants and requests the following relief:

A. That the defendants be served a copy of this Complaint and be required to answer as required by the Federal Rules of Civil Procedure;

B. That the Court award compensatory damages in the amount of FIVE MILLION ($5,000,000) and punitive damages in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000);

C. That the Court award costs, and discretionary costs;

D. Any other relief the Court may deem fit and proper;

G. Any other relief the Court may deem fit and proper pursuant to 42 U.S.C. §1988, and

H. Allow a jury trial on all issues triable by jury.

Respectfully submitted,

**By:___s/ Robin Ruben Flores___**

**ROBIN RUBEN FLORES, TENN. BPR #20751**
Counsel for Plaintiff
4110-A Brainerd Road
Chattanooga, TN 37411
423 / 267-1575 fax 267-2703
Email: robinflores@comcast.net

Certificate of Service
I certify that I have served all persons listed on the ECF/CM receipt and to the following persons via US Mail:

David Gillium, 6927-B Tiffany Lane, East Ridge, Tn 37412

Joe McCowan, 195 Old England Road, Trenton, Ga 30752

s/ Robin Ruben Flores___